MOORE, Judge,
concurring in the result.
This appeal arises from a judgment declaring E.B. and C.B., the two children of G.H. (“the mother”) and J.R.B. (“the father”), dependent and awarding their custody to the father.[4] The mother argues that the Cleburne Juvenile Court (“the juvenile court”) lacked subject-matter jurisdiction over what she describes as a custody dispute between the parents and, therefore, that the juvenile court erred in transferring custody of the children to the father on the grounds of their dependency.
Generally speaking, juvenile courts have subject-matter jurisdiction over actions in which a child is alleged to be dependent. Aia.Code 1975, § 12-15-114(a).[5] However, a “dependency action shall not include a custody dispute between parents.” Id. In Ex parte T.C., 63 So.3d 627 (Ala.Civ.App. 2010), this court interpreted § 12-15-114(a) as evidencing a legislative intent that “the juvenile courts of this state should no longer be deciding custody disputes except insofar as their resolution is direetly incidental to core juvenile-court jurisdiction....” 63 So.3d at 630-31. Dependency is a matter of core juvenile-court jurisdiction. Thus, a juvenile court retains subject-matter jurisdiction to resolve a dependency petition filed by a third party, such as the Department of Human Resources, even if both parents contest the custody of the child in the same proceeding. See, e.g., B.R.G. v. G.L.M., 57 So.3d 137 (Ala.Civ.App.2010). Based on the foregoing, I agree that the juvenile court had subject-matter jurisdiction over this dependency action.
Once the dependency jurisdiction of the juvenile court is properly invoked, the juvenile court must hold an evidentiary hearing to determine whether clear and convincing evidence proves the dependency of the child. K.C.G. v. S.J.R., 46 So.3d 499, 501 (Ala.Civ.App.2010). In dependency cases, a juvenile court has jurisdiction to transfer custody of a child if, and only if, the child is determined to be dependent at the time of the disposition. See V.W. v. G.W., 990 So.2d 414, 417 (Ala.Civ.App. 2008) (“ ‘[I]n order to make a disposition of a child in the context of a dependency proceeding, the child must in fact be dependent at the time of that disposition.’ ” (quoting K.B. v. Cleburne County Dep’t of Human Res., 897 So.2d 379, 389 (Ala.Civ. App.2004) (Murdock, J., concurring in the result))). If the juvenile court determines *547 that clear and convincing evidence does not support the allegations of dependency, the juvenile court must dismiss the petition, Ala.Code 1975, § 12-15-311(b), and it cannot enter any order affecting the custody of the child. See Ex parte K.S.G., 645 So.2d 297, 300 (Ala.Civ.App.1992). But, if the child is found dependent based on clear and convincing evidence, the juvenile court may make any order affecting the custody of the child that the juvenile court determines serves the welfare and best interests of the child. Ala.Code 1975, § 12-15-314(a)(4).
The mother argues that the children were not dependent at the time the judgments awarding the father custody of the children were entered because, she says, she had adequately overcome her substance-abuse and domestic-violence problems so as to be able to safely parent the children. The evidence at trial indicated that the mother’s husband had been imprisoned since September 2009 and that, in the words of the mother, he “would not be getting out.” The Cleburne County Department of Human Resources (“DHR”), the entity that filed the dependency petitions in this case, presented no evidence indicating that the mother had engaged in any domestic violence since her husband’s imprisonment, and DHR did not raise any concern that the mother would resume engaging in domestic violence in the absence of her husband. DHR focused its evidence almost entirely on the mother’s incomplete recovery from her substance-abuse problem. In its oral pronouncements following the trial, the juvenile court stated its belief that, although the mother had made much progress toward conquering her substance-abuse problem, she was still too early in the recovery process to safely assume custody of the children. That belief rested on evidence indicating that the mother, who was 32 years old at the time of trial, had abused illegal drugs since she was 19 or 20; that she had lost custody of her children once before, years earlier, due to that same problem, which she briefly overcame; that the mother had relapsed in June 2008 and had regularly used methamphetamine through August 2009; that the mother had abused alcohol following the children’s being removed from her custody; that the mother had completely abstained from substance abuse for only about 2 months before trial, part of which occurred during her participation in a 30-day inpatient drug-rehabilitation program; and that, according to the mother’s substance-abuse counselor, the mother’s recovery was not yet assured and she would require monitoring by DHR if she regained custody of the children. I believe that evidence alone was sufficient for the juvenile court to be clearly convinced that the mother was not yet in a position to independently and safely parent the children. See Ex parte McInish, 47 So.3d 767, 778 (Ala.2008) (holding that appellate courts must review factual findings that are required to be proven by clear and convincing evidence to determine whether there exists evidence in the record from which the lower court, based on its own weighing of the evidence, could have concluded that the fact sought to be proved was clearly and convincingly established).
The evidence revealed that the father had successfully overcome his own substance-abuse problems in 2004 and that he had remained committed to his sobriety since that time. The father had since stabilized; he works as a foreman on a drilling crew, he lives in a four-bedroom, two-bathroom house, he has remarried and is having his second child with his new wife, he cares on weekends for his new wife’s two children from a former marriage, he fairly regularly visits with the children, and he routinely pays child support for the *548 children. That evidence supports the juvenile court’s implicit finding that the father was fit and qualified to receive and care for the children and that their best interests would be served by placing them in his custody. See Ala.Code 1975, § 12-15 — 314(a)(3)c. (authorizing juvenile court to place custody of dependent child with relative who “is found by the juvenile court to be qualified to receive and care for the child”).
However, the mother argues that that same evidence proves that the children were not dependent. The mother asserts that a child cannot be dependent if the child has a parent that is fit and willing to assume custody. The mother contends that, because the juvenile court found that the father was a fit and willing parent, it could not find the children dependent and, thus, that it did not have any jurisdiction to modify the prior divorce judgment awarding her custody.
Section 12-15-102(8), Ala.Code 1975, defines a “dependent child” as:
“a. A child who has been adjudicated dependent by a juvenile court and is in need of care or supervision and meets any of the following circumstances:
“1. Whose parent, legal guardian, legal custodian, or other custodian subjects the child or any other child in the household to abuse, as defined in subdivision (2) of Section 12 — 15—301[, Ala. Code 1975,] or neglect as defined in subdivision (4) of Section 12-15-301, or allows the child to be so subjected.
“2. Who is without a parent, legal guardian, or legal custodian willing and able to provide for the care, support, or education of the child.
“3. Whose parent, legal guardian, legal custodian, or other custodian neglects or refuses, when able to do so or when the service is offered without charge, to provide or allow medical, surgical, or other care necessary for the health or well-being of the child.
“4. Whose parent, legal guardian, legal custodian, or other custodian fails, refuses, or neglects to send the child to school in accordance with the terms of the compulsory school attendance laws of this state.
“5. Whose parent, legal guardian, legal custodian, or other custodian has abandoned the child, as defined in subdivision (1) of Section 12-15-301.
“6. Whose parent, legal guardian, legal custodian, or other custodian is unable or unwilling to discharge his or her responsibilities to and for the child.
“7. 'Who has been placed for care or adoption in violation of the law.
“8. Who, for any other cause, is in need of the care and protection of the state.”
The mother essentially argues that a child who has at least one fit parent willing to assume custody of the child cannot be “in need of care or supervision,” one of the essential elements of dependency under § 12-15-102(8)(a).
The phrase “in need of care or supervision” first appeared in a dependency statute in 1975 when the legislature adopted the original Alabama Juvenile Justice Act (“the old AJJA”), Ala.Code 1975, § 12-15-1 et seq.; the following definition of “dependent child” appeared in the old AJJA:
“A child:
“a. Who, for any reason is destitute, homeless, or dependent on the public for support; or
“b. Who is without a parent or guardian able to provide for the child’s support, training, or education; or
“e. Whose custody is the subject of controversy; or
*549 “d. Whose home, by reason of neglect, cruelty, or depravity on the part of the parent, parents, guardian, or other person in whose care the child may be, is an unfit and improper place for the child; or
“e. Whose parent, parents, guardian, or other custodian neglects or refuses, when able to do so or when such service is offered without charge, to provide or allow medical, surgical, or other care necessary for the child’s health or well-being; or
“f. Who is in a condition or surroundings or is under improper or insufficient guardianship or control as to endanger the morals, health, or general welfare of the child; or
“g. Who has no proper parental care or guardianship; or
“h. Whose parent, parents, guardian, or custodian fails, refuses, or neglects to send the child to school in accordance with the terms of the compulsory school attendance laws of this state; or
“i. Who has been abandoned by the child’s parents, guardian, or other custodian; or
“j. Who is physically, mentally, or emotionally abused by the child’s parents, guardian, or other custodian or who is without proper parental care and control necessary for the child’s well-being because of the faults or habits of the child’s parents, guardian, or other custodian or their neglect or refusal, when able to do so, to provide them; or
“k. Whose parents, guardian, or other custodian are unable to discharge their responsibilities to and for the child; or
“l. Who has been placed for care or adoption in violation of the law; or
“m. Who for any other cause is in need of the care and protection of the state; and
“n. In any of the foregoing, is in need of care or supervision.”
Ala.Code 1975, former § 12-15-1(10) (now codified at § 12-15-102(8)(a)). The phrase “in need of care or supervision” remained in the old AJJA until it was amended and renumbered as of January 1, 2009; it is now found in § 12-15-102(8)(a), a part of the new Alabama Juvenile Justice .Act (“the new AJJA”), Aa.Code 1975, § 12-15-101 et seq. See supra note 5.
This court has only recently recognized that the phrase “in need of care or supervision” constitutes one of two prongs necessary for a finding of dependency. See J.W. v. N.K.M., 999 So.2d 526, 532 (Aa. Civ.App.2008) (“Subsections a. through m. of [former] § 12-15-1(10)[, Aa.Code 1975,] are all alternative bases for a dependency finding. In addition to one or more of those alternatives, in order for a child to be determined to be dependent, subsection n. must also be met. Subsection n. of [former] § 12-15-1(10) specifies that, in addition to the alternate bases for a dependency finding, a child is dependent if he or she ‘is in need of care or supervision.’ ”). Other than that recognition, neither this court nor our supreme court had ever construed the phrase “in need of care or supervision” until the supreme court issued its opinion in Ex parte L.E.O., 61 So.3d 1042 (Aa.2010). In Ex parte L.E.O., the supreme court held that
“[i]t is a reasonable interpretation of [former] § 12-15-1(10)[, Aa.Code 1975,] to require that, in determining whether a child is ‘in need of care or supervision,’ the juvenile court must consider whether the child is receiving adequate care and supervision from those persons legally obligated to care for and/or to supervise the child. The child is entitled to the care or supervision from those persons with the authority to take *550 appropriate actions on behalf of the child, such as, for example, to enroll the child in school, to authorize medical care for the child, and to obtain insurance for the benefit of the child. This interpretation comports with the purposes of the [new] Alabama Juvenile Justice Act, ... § 12-15-101 et seq., Ala.Code 1975, among which are to provide children with permanency and to foster family preservation.”
61 So.3d at 1047.
Based on the above-quoted excerpt from L.E.O., there are two possible ways in which the children in this case could be considered dependent. First, if both parents had legal custody of the children,[6] the juvenile court could have determined that neither legal custodian was actually providing the required care, see Ala.Code 1975, § 12-15-102(16) (providing that a legal custodian has the personal duties to protect, train, and discipline the child and to provide the child with food, shelter, clothing, education, and medical care), the mother because of her ongoing substance-abuse problem and the father because of his physical separation from the children. Second, if the mother was the sole legal custodian, see Ala.Code 1975, § 30-3-151(4) (providing that a sole legal custodian has “sole rights and responsibilities to make major decisions concerning the child, including, but not limited to, the education of the child, health care, and religious training”), the juvenile court could have determined that the mother was not capable of discharging those responsibilities. In either case, the children would be considered dependent despite the fact that the father, their noncustodial parent, was willing and able to properly care for and supervise them.[7]
In J.J. v. J.H.W., 27 So.3d 519 (Ala.Civ. App.2008), and Floyd v. Alabama Department of Human Resources, 550 So.2d 980 (Ala.Civ.App.1988), aff'd, 550 So.2d 982 (Ala.1989), this court affirmed judgments finding children dependent and awarding their custody to a noncustodial parent. However, in J.J., the custodial parent conceded the dependency of the children and this court expressly noted that the dependency of the children was not an issue before this court. 27 So.3d at 522 n. 1. In Floyd, the mother raised three issues regarding the correctness of a judgment finding her children dependent, awarding their custody to the children’s father, and awarding her specified visitation rights. 550 So.2d at 980. None of those issues concerned whether the children could be found dependent when their noncustodial parent was fit and willing to assume their custody. Hence, neither this court, nor the supreme court on certiorari review, Ex parte Floyd, 550 So.2d at 983-84, addressed that issue. I have not found any other case in which this court or our supreme court has expressly held that a child *551 may be found dependent when the child has a fit and willing noncustodial parent ready to assume his or her custody.
Ex parte L.E.O. does not directly address that issue either. In L.E.O., the supreme court concluded that neither parent was fit and willing to assume custody of the child at issue, so the court did not have before it a noncustodial parent deemed qualified to receive and care for the child. Nevertheless, the holding in L.E.O. defining the term “in need of care or supervision” is worded broadly to encompass any situation in which a child is not receiving care from the persons legally obligated to provide it. Hence, as illustrated above, the holding in L.E.O. apparently extends to situations like the one present in this ease in which a child’s custodial parent has become unable or unwilling to discharge his or her parental responsibilities to and for the child and the child is not currently under the care of a noncustodial parent, although that noncustodial parent is fit, willing, ready, and able to assume the care of the child.
As noted by the dissent in L.E.O., the construction of the phrase “in need of care or supervision” applied by the majority in L.E.O. raises serious constitutional and statutory questions. 61 So.3d at 1050 (Murdock, J., dissenting). In addition to the problems identified by the dissent in L.E.O., the definition used by the supreme court now, for the first time in the history of this State, allows a juvenile court to find a child, who has a fit and willing parent ready to assume the custody of the child, dependent. The power to declare a child dependent, once exercised by the juvenile court, carries with it the authority to dispose of the custody of the child in any manner the juvenile court deems in the best interests of the child, see Ala.Code 1975, § 12-15-S14(a)(3)c., to monitor the care of the child to assure the care the child is receiving meets the juvenile court’s standards, see Ex parte Montgomery County Dep’t of Human Res., 10 So.3d 31, 37-38 (Ala.Civ.App.2008), and to keep the custody of the child within its jurisdiction until the child attains 21 years of age. See § 12-15-117, Ala.Code 1975. Essentially, a child who is declared dependent becomes a ward of the State, subject to its supervision and control through the juvenile court. See York v. Willingham, 18 Ala. App. 59, 60, 88 So. 218, 218-19 (1920). Surely, the legislature did not intend for the State to assume and wield such awesome power over a child with a fit and willing parent, a child who does not need the State’s care, protection, or supervision. Even if the legislature did intend that result, as a matter of constitutional law I believe that intent could not be carried out without violating the due-process rights of the parents and the child. For those reasons, I implore the supreme court to reconsider its decision in Ex parte L.E.O.
Until that decision is recalled or overruled, however, I am compelled to follow the decision in L.E.O. See § 12-3-16, Ala. Code 1975 (“The decisions of the Supreme Court shall govern the holdings and decisions of the courts of appeals.”). Thus, in this case, I have no choice other than to agree with the majority that the judgment of the juvenile court is due to be affirmed.[8]

. The juvenile court also awarded the mother visitation consistent with a visitation order entered regarding the mother’s other child, M.C. The mother argues on appeal that the juvenile court erred in fashioning an award of visitation that essentially grants the father complete control over her right to visit the children. However, the mother did not include the visitation order relating to M.C. in the record, so this court has no basis for determining the merits of the mother's argument. Thus, I agree with the main opinion that we cannot reverse the judgment for failing to provide the mother specific visitation rights.

. Section 12-15-114(a), Aia.Code 1975, is a part of the new Alabama Juvenile Justice Act (“the new AJJA”), § 12-15-101 et seq., Ala. Code 1975, that became effective January 1, 2009; the new AJJA repealed or amended and renumbered the provisions in the former Alabama Juvenile Justice Act, § 12-15-1 et seq., Aia.Code 1975. Because the petitions were filed after January 1, 2009, this case is governed by the new AJJA.

. The record is unclear as to the exact nature of the custody the divorce judgment awarded the mother.

. Many noncustodial parents do not have legal custody of their children. Legal custody carries with it a personal obligation to protect, train, and discipline a child and to provide the child with food, shelter, clothing, education, and medical care. Ala.Code 1975, § 12-15-102(16). Under the interpretation advanced in Ex parte L.E.O., 61 So.3d 1042, a juvenile court can declare a child dependent even when that child has a fit and willing noncustodial parent simply because that parent does not have legal custody and is not presently providing food, shelter, clothing, education, and medical care for the child. Once a child is determined to be dependent, the juvenile court has no imperative duty to award custody of the child to the noncustodial parent; rather, it must only give that parent "preference” over potential nonrelative custodians. See Ala.Code 1975, § 12-15-314(a)(3)c.

. Absent the holding in Ex parte L.E.O., in order to uphold the validity of the juvenile court’s judgment, see Cockrell v. Cockrell, 40 So.3d 712, 715 (Ala.Civ.App.2009), I would have construed the judgment as a proper exercise of the juvenile court’s emergency juris *552 diction to transfer custody of a child. See § 12-15-138, Ala.Code 1975. The evidence revealed that, due to the mother’s substance-abuse problems, the safety of the children would have been imperiled by allowing the mother to exercise custody. At the close of the trial, and in the visitation terms of its judgment, the juvenile court clearly expressed its intent to award custody of the children to the father for protective purposes while the mother progressed in her recovery. In such circumstances, the juvenile court had the emergency power to place the children in the custody of the father for their protection until the father could obtain a custody judgment from a circuit court. See Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003) (subject to due-process constraints, appellate courts "will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court”).